Affirmed.

28 C.C.P.A.(Patents)

## In re MOSS.

### Patent Appeal No. 4369.

Court of Customs and Patent Appeals.

Nov. 8, 1940.

Charles C. Scheffler and Eugene L. Greenewald, both of New York City (Alfred E. Page, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner denying patentability, in view of prior art cited, of claims numbered, respectively, 41, 42, and 44 embraced in appellant's application for patent relating to steel beams and a method of making same. Claims 41 and 42 cover the method while claim 44 covers the article. Several claims stand allowed.

The appealed claims read:

"41. A method of simultaneously forming shaped edges on two steel plates, which comprises arranging said plates in such position that an edge of one plate abuts against an edge of the other plate; and progressively and concurrently applying a heating medium and a low velocity stream of oxygen obliquely against each of said plates and lengthwise of such abutting edges, said stream being so applied that metal is removed from less than the initial width of each edge and so that the remaining initial portion of each edge is left substantially unchanged.

"42. A method of weld uniting steel plates which comprises arranging said plates in such a position that an edge of one plate abuts an edge of the other plate to form a seam therebetween; progressively applying a heating medium against a portion of one side of each plate at said seam; simultaneously with the application of said heating medium, directing a low velocity stream of oxygen obliquely against the plate portions so heated and lengthwise of said seam in such a manner as to remove metal from less than the initial width of each of such abutting edges, to form a welding groove extending along said seam; and, while said plates are in their initial relation and the surfaces of said groove are still heated to an elevated temperature from such groove-forming operation, depositing molten weld metal in and along said groove to unite said plates."

"44. A metallic plate adapted to be weld united to at least one other similar plate, said plate having along an edge face thereof a flame machined surface which slopes inwardly from a point on said edge face spaced from one of the main faces of said plate and extends to the other main face of said plate, said flame machined surface having a curved sectional contour formed by progressively and concurrently applying a heating medium and a low velocity stream of oxygen lengthwise of the initial edge surface of said plate."

The following references are cited:

Stresau, 1,532,842, April 7, 1925.
Rooke, 1,732,912, October 22, 1929.
Grow 1,787,247, December 30, 1930.
Stresau, 1,812,123, June 30, 1931.
Oldham, 1,957,351, May 1, 1934.

It appears that the appealed claims before us were introduced into the application after a decision by the board in which new references were cited, affirming that of the examiner rejecting other claims as to which no appeal to us was taken. Those claims were rejected by the examiner on the two patents to Stresau and the patent to Grow. In its decision there the board cited the respective patents to Oldham and Rooke which were supplied by the examiner in response to the board's request for art relating to a torch. In view of these new citations the examiner reopened the case "to the extent indicated by [Patent Office] Rule 139" and considered the newly introduced claims, saying:

"Claims 41, 42, and 44 are *finally* rejected on either of the Stresau patents, in view of Grow, Rooke or Oldham, all of record. These claims call for nothing more than the formation of Stresau's grooves by flame machining in the manner suggested by each of the other patents. The Board expressly held this combination of references to be proper. Claim 42 also includes the statement that the welding is done while the metal is still hot from cutting, but this limitation was present in claim 30, which was held unpatentable by the Board and, therefore, cannot be regarded as involving invention.

"Claim 44, moreover, fails to distinguish from Stresau alone, for the reasons given by the Board in connection with claim 39.

The affidavit filed has been considered. However, the fact that it may be possible to distinguish between flame machined and other surfaces is not sufficient to establish that there is a patentable difference between them."

In its decision upon the second appeal taken to it from the second decision of the examiner, the board said:

"We consider that the situation is substantially the same as at the time when we rendered our first decision except that an affidavit has been filed to show that it is possible to ascertain from an examination of the product that the groove has been made by the particular type of flame cutting which is claimed. In view of this evidence, we think that, in the event of a reversal of our decision as to the method claims, there would be no objection to the allowance of article claim 44.

"As to the prior art, we can discover no reason for modifying our former position."

The foregoing decision of the board eliminates any issue, so far as this court is concerned, respecting the *form* of the article claim (No. 44), and the fact that the claim describes the article by the method of making it does not require our attention. The sole question as to each of the appealed claims, therefore, is whether invention is shown in view of the prior art cited.

In the brief on behalf of appellant the three claims are analyzed together as follows:

"The invention, as defined in the appealed claims, is (claim 41) a method of simultaneously forming shaped edges on two steel plates, which comprises:

"(1) Arranging the plates in such a position that an edge of one plate abuts against an edge of the other plate, and

"(2) progressively and concurrently applying a heating medium and a low velocity stream of oxygen obliquely against each of the plates and lengthwise of the abutting edges,

"(3) such stream of oxygen being so applied that metal is removed from less than the initial width (depth) of each edge and so that the remaining initial portion of each edge is left substantially unchanged;

"Also (claim 42) a method of weld uniting such plates, while they are in their initial relation with the shaped edges cooperating to form a welding groove and while the surfaces of said groove are still heated to an elevated temperature by depositing molten weld metal in and along such groove to weld unite the plates;

"And (claim 44) a metallic plate adapted to be weld united to at least one other similar plate, such plate having, along an edge face thereof, a flame machined surface which slopes inwardly from a point (spaced from one of the main faces of the plate) on such edge face and which extends to the other main face of the plate, such flame machined surface having a curved sectional contour formed by progressively and concurrently applying a heating medium and a low velocity stream of oxygen lengthwise of the initial edge surface of the plate."

From the foregoing analysis, taken in connection with the text of the claims, it appears that claim 42 embraces all the steps defined in claim 41 and, in addition, the step of depositing molten weld metal in and along the welding groove (resulting from the previous steps) for the purpose of uniting the plates, this depositing operation to take place while the plates are in their initial relation with the surfaces of the groove still heated to an elevated temperature from the groove forming steps.

It will be observed that in appellant's analysis above quoted, the first step of the method claims is defined as "Arranging the plates in such a position that an edge of one plate abuts against an edge of the other plate," and the second is defined as "progressively and concurrently applying a heating medium and a low velocity stream of oxygen obliquely against each of the plates lengthwise of the abutting edges."

It is found, however, that in a subsequent part of the brief those two steps are combined and treated as one step. This is done in connection with appellant's assertion that "No reference of record clearly shows even one of appellant's claimed method steps and no reference shows all of the claimed method steps or their equivalent," upon the basis of which it is argued that "The rejection of a method claim on a combination of references, no one of which clearly shows any step and none of which shows all of the steps of the method or their equivalents, is clearly improper."

In our view it is immaterial, so far as the feature of having an edge of one plate abut against an edge of another plate is concerned, which of appellant's analyses be taken. Whether that feature be considered as a step standing alone, or as a part of a

step, it would not, in our view, of itself be patentable over the disclosure of Stresau's patent No. 1,812,123, which relates to the art of welding thick metal plates.

It is fair to say that we do not understand appellant to rely particularly upon this step except as it may be considered in connection with the entire process.

The really material matter, except the limitation in claim 42 hereinafter discussed, is involved in the second and third steps, as given in appellant's first analysis above quoted.

It is conceded that neither of the patents to Stresau discloses the process defined in those steps. Stresau does not form grooves by the use of a flame throwing device, as does appellant, but forms them by forging the edges of the parts which are to be welded after clamping such parts together. After the forging process the grooves are filled with weld metal and the welding operation is carried out by means of an electric arc "formed at the point of a destructible weldrod, which conducts the welding current."

The patent to Grow originally was the only reference cited by the examiner with respect to formation of grooves by "flame machining" the edges of the parts to be welded. Grow discloses a method of shaping plate edges by the use of two oxygen distributing devices or torches "making simultaneously two parallel cuts in planes which intersect within the thickness of the metal," one of the cuts forming "one face of the edge to be shaped, while the other cut forms the other face meeting the first at an angle."

It was the view of the examiner that the "flame machining" feature of certain claims then under discussion (for which the claims before us eventually were substituted) involved "merely the substitution of the method used by Grow in forming a welding groove for the equivalent [forging] method of Stresau."

In its decision on those claims the board said:

"This application relates to a method of welding in which a flame is employed for cutting grooves for welding material.

"The Stresau patents disclose grooves of substantially the same nature as those claimed by appellant and it is the position of the examiner that it would not involve invention to employ the jet flame shown in Grow as a means for cutting grooves of the type shown in Stresau.

"Appellant states that the high pressure jet of Grow is not suitable for this purpose and inasmuch as he does not contend that the torch employed by him was new per se, we have asked the examiner to supply us with art disclosing such a torch. The examiner has called our attention to Oldham, No. 1,957,351, May 1, 1934, and Rooke, No. 1,732,912, October 22, 1929. The first mentioned patent appears to be more pertinent as the flame and groove in that patent are arranged in the same relationship as that disclosed by appellant. The Rooke patent, however, is of earlier date and also definitely describes the nature of the cutting flame on page 2 in the paragraph commencing at line 26. On the same page at line 15, it is indicated that the operator can regulate the depth of the channel. In the Oldham patent, on page 1 at line 27, it is stated in effect that the flame cutting is a substitute for chipping or milling operations and on page 2 in the paragraph commencing at line 51 the nature of the action of the flame is fully discussed.

"We believe that to anyone desiring to form grooves such as shown by Stresau and having knowledge not only of the Grow patent but those of Oldham and Rooke, it would be obvious to select the low pressure flame of the last mentioned patents for the purpose. It is our opinion, therefore, that the claims which include a flame cutting limitation are devoid of invention over the art, particularly in view of the prior knowledge nature of the flame which appellant is using as explained by the patents to which our attention has been called. We, of course, are not unmindful of the fact that the grooves disclosed by Oldham and Rooke are not as deep as those formed by appellant."

The subsequent decisions of the examiner and the board, after the claims here on appeal had been substituted, added nothing new (except the board's comment respecting claim 44 already alluded to) to what had been stated in their first decisions.

It has been our endeavor to set forth the salient features of appellant's claims and the disclosures of the prior art in sufficient detail to make them clear. Appellant's brief made analyses of the references and pointed out details in which his claimed invention differs from each of them. These differences were conceded by the tribunals

of the Patent Office, but were held, in effect, not to present an inventive concept over the references. We have carefully considered such differences in the light of appellant's arguments thereon and we are not convinced that there was error in the holdings below upon the features so far discussed, which are present in all the claims.

It has been pointed out, however, that claim 42 contains a feature not present in the other claims. This has been quoted above and need not be repeated. The examiner said of it: "Claim 42 also includes the statement that the welding is done while the metal is still hot from cutting, but this limitation was present in claim 30, which was held unpatentable by the Board and, therefore, cannot be regarded as involving invention."

In its decision on the first appeal the board made no specific reference to claim 30, nor did it make any specific reference to claim 42 (other than to say that it was involved) in its decision on the second appeal.

In "Letter of examiner, February 4, 1937," it was said of claim 30: "Claim 30 specifies that the plates are welded while the surfaces are still hot from the flame machining. This is something inherent in flame-machining edges to-be welded, and of course inherent in Grow's process."

So, the Grow patent was cited in this manner with respect to the limitation under discussion, embraced at that time in claim 30 and now embraced in appealed claim 42.

Appellant's argument upon this point is predicated almost wholly upon the fact that a claim numbered 43 (which it is insisted involved the same step in principle), was allowed below.

The holdings of this court and other courts to the effect that a claim rejected by the tribunals of the Patent Office may not be measured (upon the prima facie question of patentability) by a claim allowed by such tribunals are numerous, and the reasons stated for such holdings often have been stated. The rule is so academic and so well known that no citation of authorities is deemed necessary here.

Appellant has failed to convince us that there was error on the part of the board and its decision is affirmed.

Affirmed.